**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 13-15760 MER |
| WESTERN CAPITAL PARTNERS LLC | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| RUFUS COOK, BARBARA REVAK, | ) |
| THE RIDGELAND CORPORATION, | ) Case No. 21-cv-00974-REB |
| RIDGELAND EAST END, LLC, | ) |
| UNITED LEGAL FOUNDATION, | ) |
| JACKSON PARK PINNACLE PLAZA, LLC, | ) |
| And COOK REVAK & ASSOCIATES, LLC, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| WESTERN CAPITAL PARTNERS LLC, | ) |
| | ) |
| Appellee. | ) |

**MOTION TO DISMISS APPEAL**

Appellee Western Capital Partners, LLC ("WCP") moves the Court to dismiss this appeal

as moot.  In support, WCP represents as follows:

I.   **Introduction and Factual Background**

As summarized in the Order forming the basis for this appeal, the parties' dispute stretches

back decades.[1]  For purposes of this motion, however, the pertinent facts are relatively simple and

straightforward, as follows:

1.      Beginning in 2007, the Appellants and WCP were involved as adversaries in

litigation in the state courts of Illinois, during which the Appellants asserted multiple claims

_____

[1]  *See* Doc. 150, Adversary Case No. 14-1119-MER, U.S. Bankruptcy Court, District of Colorado
(the "Order"), attached as Exhibit A, at 2-11.

against WCP arising from loan and related transactions.  By December, 2012, all of the Appellants' claims had been dismissed with prejudice at a cost to WCP of approximately $2,000,000.  *See* Exhibit A (Order), at 7-10; Exhibit B, Affidavit of Ronald L. Warren ("Warren Affidavit"), ¶ 2.

2.    Following the dismissals, WCP filed a voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. 101, et seq., the "Code") on April 10, 2013.  *See* Order, at 1; Warren Affidavit, ¶ 2.

3.    On July 1, 2013, notwithstanding the previous dismissals, the Appellants filed unsecured claims in WCP's bankruptcy totaling tens of millions of dollars.  *Id.*, Order at 1.

4.    On January 6, 2014, WCP filed an Amended Plan of Reorganization.  *See* Exhibit *See* Exhibit C ("Plan").  Among other things, the Plan: (a) placed all allowed unsecured claims (as defined) in Class 6, treating them as impaired; (b) provided that those claims would be paid using funds obtained through then ongoing third party litigation; and (c) prohibited the payment of any disputed claim pending final resolution of all objections.  *Id.*, Secs. 1.13, 1.21, 1.22, 1.29, II. A. (6), and 8.1(b), pp. 3, 4, 5, 6 and 13.

5.    On February 26, 2014, WCP commenced an Adversary Proceeding (Case No. 14-1119-MER (the "Adversary")) against the Appellants, seeking disallowance of their claims (including because they had been dismissed with prejudice in the Illinois litigation) or, alternatively, their subordination pursuant to 11 U.S.C. 510(c).  *See* Order, at 10.

6.    WCP's Plan was confirmed on May 15, 2014.  *See* Order at 1; Exhibits D and E. Neither the Appellants nor any other party in interest appealed the confirmation.

7.    Following the Plan's confirmation, WCP liquidated its real estate, settled with its insurers, and pursued and resolved its litigation against third parties.  By May, 2019, all secured

debt addressed by the Plan had been paid or otherwise satisfied in full, leaving a cash balance available to unsecured creditors of approximately $640,000.  The final third party action was settled in January, 2020, and by March, 2020, the settlements had produced approximately $720,000, net of professional and administrative expense.  *See* Warren Affidavit, ¶¶ 3-5.

8.      On February 21, 2020, WCP filed a Final Report with the Bankruptcy Court, reporting that all claims had been fully administered, with the exception of two pending objections, including those raised in the Adversary.  *See* Exhibit F.[2]  The Bankruptcy Court entered a Final Decree on March 31, 2020, closing WCP's bankruptcy with the exception of jurisdiction retained to resolve the ongoing claim objections.  *See* Exhibit G.

9.      Due to ongoing administrative and litigation expense, including expense incurred in the Adversary and in ongoing litigation brought by the Appellants in Illinois,[3] the proceeds of litigation had been reduced to approximately $635,000 as of year-end 2020.  *See* Warren Affidavit, ¶ 6.  In order to cap its administrative expense and preserve the remaining litigation proceeds for distribution to its unsecured creditors (who by then had been awaiting payment for over 5.5 years following the Plan's confirmation), WCP filed a closing tax return as of December 31, 2020.  *Id.*

10.     The Bankruptcy Court entered its Order and Judgment in the Adversary on March 22, 2021.  *See* Order and Exhibit H.  The Appellants did not seek a stay respecting the Order and Judgment.

11.     On March 26, 2021, WCP distributed litigation proceeds totaling $595,034.59 to its nineteen (19) allowed unsecured creditors (the "Unsecured Creditors") pursuant to the Plan (the

---

[2]  The objection to the claim of Richard J. Samson, referenced in Paragraph 6 of the Final Report, was resolved by settlement filed with the Bankruptcy Court on January 28, 2020, approved by the Bankruptcy Court on March 5, 2020.  *See* Warren Affidavit, ¶ 5.
[3]  *See* Order, at 7–11.

"Final Distribution"). *See,* Warren Affidavit, ¶ 7.  An additional $38,500 was paid to WCP's

attorneys to insure WCP's representation in ongoing matters, including this appeal and ongoing

litigation in Illinois.  *Id.*[4]

      12.     Only two of the Unsecured Creditors have had any relationship or dealing with the

Appellants.

      A.     The first, Schiff Hardin, LLC, represented WCP in the Illinois litigation.  On

September 20, 2011, the Appellants filed a "First Petition for Adjudication of Direct

Criminal Contempt" accusing WCP, Schiff Hardin, and others of orchestrating and

implementing a criminally fraudulent scheme  involving perjury, forgery and obstruction of

justice.  *See* Exhibit I.  The Petition sought orders of criminal contempt, fines, the

expungement of pleadings, and referral for further investigation.  *Id.*, pp. 27 – 29.  On

October 3, 2013, the Illinois Court dismissed the Petition (together with a second Petition

filed against additional parties and attorneys).  *See* Exhibit J.  The dismissal was affirmed

on appeal to the Appellate Court of Illinois (First District) on October 25, 2015.  *See*

Exhibit K.  No further appeals were taken.

      B.     The second, Jeffrey D. Adams, is the former CEO of WCP.  Mr. Adams offered

affidavits in support of WCP's positions the Illinois litigation.

      None of the remaining Unsecured Creditors have had any relationship or interaction with

any of the Appellants, nor have they ever been accused of any wrongdoing by the Appellants or

anyone else in the context of WCP's bankruptcy.

      13.     WCP's confirmed Plan, substantially completed in early 2020, has been fully

---

[4] As noted, WCP's active involvement in the litigation ceased approximately 10 years ago.
Nonetheless, the litigation, now in its fourteenth (14th) year, somehow continues in the form of
claims brought by the Appellants against a final defendant, one Jeffrey Deer, a former attorney.

performed.  All assets of WCP and its estate have been distributed and paid, and none remain.  *See,*
Warren Affidavit, ¶ 8.

**II.**     **Argument**

An order disallowing a claim in bankruptcy is "self-executing" and "effective and binding
immediately upon entry."  *In re Whatley*, 155 B.R. 775, 781 (Br. D. Colo. 1991).  Its effect is not
stayed under B.R. 7062, but can only be stayed or suspended through an express order.  *Id.*

No such order was sought or issued here.  Accordingly, and pursuant to its confirmed Plan,
WCP was entitled – in fact, obligated – to disburse its remaining assets to its allowed unsecured
creditors.  That it did.  As a result, this appeal is both constitutionally and equitably moot.

**A.**     **This Appeal is Constitutionally Moot**

"It has long been settled that a federal court has no authority 'to give opinions upon moot
questions or abstract propositions, or to declare principles or rules of law which cannot affect the
matter in issue in the case before it.'"  *Church of Scientology of Cal. v. United States*, 506 U.S. 9,
12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  Thus, an appeal in bankruptcy is
constitutionally moot where "the appellee demonstrates that a court could order no meaningful
relief to the party seeking reversal of the bankruptcy court's decision."  *Search Mkt. Direct, Inc. v.
Jubber (In re Paige)*, 584 F.3d 1327, 1330 (10th Cir. 2009); *see also*, *Church of Scientology of
Cal.*, supra.  Among other circumstances, "meaningful relief" is not possible where "funds have
been disbursed to persons who are not parties to the appeal."  *In re Blumer*, 66 B.R. 109, 113
(B.A.P. 9th Cir. 1986) *aff'd*, 826 F.2d 1069 (9th Cir. 1987); *see also, Bartel v. Bar Harbor Airways,
Inc.*, 196 B.R. 268, 272 (S.D.N.Y.1996) (finding inability to provide effective relief where "asset
sales are completed and the proceeds already distributed").

Here, all assets of WCP and its bankruptcy estate have been paid and disbursed to persons

not parties to this appeal or the underlying Adversary, including the Unsecured Creditors, in accordance with a reorganization Plan confirmed nearly seven years ago.  This renders the appeal constitutionally moot for three reasons.

First, no procedural mechanism exists to compel the joinder of those persons and entities in this appeal (or, for that matter, in the Adversary).  Absent joinder, this Court has no jurisdiction or authority to affect their interests.  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (10th Cir. 1988)("[w]e are without jurisdiction to impose substantial adverse consequences upon . . . absent persons").  Thus, this appeal cannot afford the Appellants any relief affecting the distributions or the rights of those who received them and, if they prevail, the Appellants will gain nothing.

Second (again, assuming the Appellants prevail here), the Bankruptcy Court would have no jurisdiction to effect meaningful property-based relief on remand.  Bankruptcy jurisdiction extends to property of the debtor and the estate.  28 U.S.C. 1134(e).  Under the confirmed Plan, the property of WCP's estate was transferred to WCP as the "reorganized Debtor."  *See* Plan, at Secs. 1.3 and 6.1(a), pp. 2 and 10-11; *see also*, 11 U.S.C. 1127(a) (confirmed plan binds the debtor, all creditors and all equity interests).  Thus, there is no estate as a matter of law.  In addition, under the Plan, the only property interest continuing in the reorganized debtor (WCP) consists of funds that remain unclaimed one year after the creditors' entitlement to receipt.  *See* Plan, Sec. 6.5, p. 12.  No such funds exist.  *See* Warren Affidavit, ¶ 7.  Thus, there is no property of the debtor to which jurisdiction might extend.  Absent jurisdiction to affect the status of a *res* bankruptcy cannot act.

Third, and consistent with the foregoing, there is no substantive basis upon which this Court or the Bankruptcy Court might compel disgorgement of amounts the Unsecured Creditors have received.  The Unsecured Creditors obtained nothing beyond their adjudicated entitlement

under the terms of a long-standing, confirmed Plan.  There is no basis in law for forcing

disgorgement that context.  *See, e.g., DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 122

(Colo. 1998)(restitution based on unjust enrichment requires some form of improper conduct by

the recipient).  Thus, any such effort would fail as a matter of law.  *In re Blumer*, supra; *accord,*

*Rindlesbach v. Jones,* 532 B.R. 850, 857 (D. Utah 2015).

In sum, no determination made in this appeal or on any remand to the Bankruptcy Court

can yield relief to the Appellants.  This appeal fails to present a case or controversy within the

meaning of Article III and must be dismissed as constitutionally moot.

**B.**       **This Appeal is Equitably Moot**

Even if some sort of relief for the Appellants could be fashioned (it cannot), this appeal is

nonetheless equitably moot.

The Tenth Circuit has identified the following factors as those "often weighed in other

cases where equitable mootness is at issue":

> (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed
> plan been substantially consummated? (3) Will the rights of innocent third parties be
> adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for
> reliance on the confirmed bankruptcy plan--and the need for creditors generally to be able
> to rely on bankruptcy court decisions--be undermined by reversal of the plan? (5) If
> appellant's challenge were upheld, what would be the likely impact upon a successful
> reorganization of the debtor? And (6) based upon a quick look at the merits of appellant's
> challenge to the plan, is appellant's challenge legally meritorious or equitably compelling?

*Jubber*, 584 F.3d at 1340.  Here, most of the listed factors are inapposite because there is no

possibility of a challenge to the Plan.  Nonetheless, each demonstrates equitable (pragmatic)

mootness.

**1.**       **Failure to seek or obtain a stay**.  The Appellants have made no attempt, either in

the Bankruptcy Court or in this Court to obtain a stay of the Order and Judgment.  This failure is,

or should be, conclusive.  *Jubber,* at 1341 ("an appellant's complete and unjustified failure to seek

a stay will often make it unfair for the court to grant relief--especially if that relief may affect third parties" (citing and quoting *Trone v. Roberts Farm, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981)).

Throughout the Adversary, WCP made clear it considered the Appellants' claims to be frivolous and foreclosed, and viewed the lengthy delays and enormous costs attending their resolution as grossly prejudicial to the interests of its unsecured creditors.  For current purposes, three examples should suffice:

a.      As an alternative to disallowance, WCP sought equitable subordination of the Appellants' claims under 11 U.S.C. 510(c).  In defending that claim against a motion to dismiss in April, 2014, WCP characterized the Appellants' conduct in the Illinois litigation as, among other things, "extortionate and enormously injurious to the interests of WCP's creditors."  *See* Doc. 3-1 (Doc. 18), attached as Exhibit L, at 12-17.  The Bankruptcy Court denied the Appellants' motion to dismiss on April 29, 2014.  *See* Doc. 3-1 (Adversary Docket filed herein on April 6, 2021), Doc. 19.

b.      On May 21, 2019 the Appellants moved the Bankruptcy Court to dissolve its abeyance order in the Adversary and grant summary judgment in their favor.  *See* Doc 3-1, Doc. 88.  WCP responded in opposition on June 4, 2019 (*see* Doc. 3-1, Doc. 91), concluding its argument as follows:

> The real victims in this farce are WCP's general unsecured creditors who, as set forth in the Affidavit of Ronald L. Warren attached as Exhibit D, are bearing the brunt of the Cook Parties' frivolous and abusive litigation tactics.  It is <u>those persons</u> whose rights and equities should count.

*See* Exhibit M, at 17 (emph. in original) and its Exhibit D.[5]  The Bankruptcy Court denied the

---

[5]  In order to avoid unnecessarily burdening the record, with the exception of its Exhibit D, Exhibits to the Response have been omitted.

Appellants' motion on August 1, 2019.  *See* Doc. 3-1, Doc. 102.

      c.     On October 4, 2019, WCP moved the Bankruptcy Court to disallow the Appellants'

claims on grounds of collateral estoppel (issue preclusion) (*see* Doc. 3-1, Doc. 115), again urging

the interests of its allowed unsecured creditors, as follows:

> This proceeding involves a core bankruptcy function in a case that has been
> pending for over 6.5 years.  As noted, WCP's petition was filed on April 10, 2013.  This
> Adversary Proceeding has been pending since February 26, 2014, and was abated for
> nearly 5 years, from November 25, 2014 to August 1, 2019, to permit the Cook Parties to
> pursue their appellate remedies.  Twice, WCP attempted to assist the pursuit of those
> remedies by requesting a Rule 304(a) finding.[6]  On both occasions the Cook Parties
> opposed that request.  When this Court resorted to its authority under Section 105(a) to
> require the Cook Parties to move under Rule 304(a) or take other steps as appropriate to
> conclude matters involving WCP, they did nothing.
>
> In the meantime – in fact, 5.5 years ago – WCP confirmed its plan of
> reorganization.  *See* Docs. 247 and 254 in Case No. 13-15760 MER.  Since then, WCP's
> unsecured creditors have awaited payment.  They are still waiting.  Every dollar spent on
> this Proceeding is a dollar from their pockets.  See Affidavit of Ronald W. Warren, Exhibit
> D to WCP's Response to Defendants' Motion to Dissolve Injunction, etc. (Doc. 91-4). . . ..
>
> It is antithetical to bankruptcy's jurisdiction and its core federal function, and highly
> prejudicial to both the estate and its creditors, to allow administration of a bankruptcy case
> to be immobilized at the hands of would be creditors who assert claims predicated on issues
> that have for years been uniformly and repeatedly rejected by a state court.  At some point,
> and certainly after years of patient abeyance, the bankruptcy court is entitled to treat as
> final what is indisputably final, and to proceed accordingly.  That is manifestly the case
> here.

*See* Exhibit N, at 26-27 (ft. nt. added, emph. in original).[7]

     In sum, throughout the Adversary, the Appellants were put on explicit and unequivocal

notice that their claims were not only vigorously opposed, but viewed as outrageously prejudicial

to the rights and interests of WCP's unsecured creditors.  That WCP would disburse its remaining

funds to those creditors – money belonging to them and for which they had waited for years – the

---

[6] Rule 304(a) is the Illinois analogue to F.R.Civ.P. 54(b).

[7] Again, the Motion's Exhibits have been omitted to avoid unnecessary burden.

moment the Appellants' claims were disallowed by the Bankruptcy Court was obvious.  Equally obvious is the absence of any excuse for the Appellants' failure to seek a stay of the Order under such circumstances.

      2.      **<u>Adverse impact on rights of innocent third parties</u>**.  "The effects that reversal will have on non-party creditors is probably the foremost concern in our analysis of equitable mootness." *Jubber,* at 1343 (citation omitted).  Here, nineteen non-parties – none of whom have anything to do with the Appellants or any wrongdoing they have alleged (or have been conclusively absolved of such charges) -- have received payments owed them for nearly 7 years under a Plan confirmed over a year following WCP's petition, meaning they have waited a minimum of 8 years to receive partial satisfaction of their allowed claims.  The injury and prejudice to them at this juncture is obvious, and will only be compounded if this appeal proceeds on the assumption (without any apparent basis) that this Court might have the authority to fashion relief binding or otherwise impacting their interests.

      Bankruptcy imposes costs on creditors in the form of administrative and legal expense, uncertainty and delay, and it is essential those impacts be kept to a reasonable minimum if bankruptcy is to function effectively.  Efficiency of estate administration is thus a central component of bankruptcy.  *In re Frontier Airlines, Inc.*, 108 B.R. 277, 279 (D. Colo. 1989)(affirming the "central policy of the bankruptcy laws to promote the expedient administration of the bankrupt estate").  This case puts that principle directly to the test.  Will the very substantial delays and costs associated with the Adversary be compounded through an appeal by would be creditors who have been unable to establish their claims in litigation spanning <u>decades</u>?  And will that occur even though the would be creditors were unable to persuade the Bankruptcy Court that they could present a genuine issue of material fact and made no effort to obtain a stay and post

security?[8]  WCP submits the answer to each is a ringing "no."  Respect for the rights on innocent third parties mandates the dismissal of this appeal.

      **3.**      <u>**Adverse impacts on confirmed Plan**</u>.  WCP's Plan, confirmed seven years ago, was substantially consummated within the meaning of 11 U.S.C. 1101(2) in February, 2020. WCP's bankruptcy case was closed by Final Decree in March, 2020, and WCP has filed its final tax return.  With the Final Distribution, the Plan has been completed.  WCP has no remaining assets, no debts, no offices or administrative personnel, and no continuing activity – with the sole exception of this appeal and any proceedings the Appellants may attempt to initiate in the ongoing Illinois litigation.

      In sum, a state of finality has existed and continues under which the settled rights and expectations arising from the Plan and its consummation should be preferred to the Appellants' efforts to flog life into claims that have been dismissed and disallowed by the courts of Illinois and the Bankruptcy Court over a period beginning in the second Bush administration.  *Jubber*, at 1341-42 (citing and quoting *United States ex rel. FCC v. GWI PCS 1, Inc. (In re GWI PCS 1, Inc.)*, 230 F.3d 788, 801 (5th Cir. 2000)); *also,* at 1347.  The Appellants were accorded multiple opportunities in the Illinois litigation to establish a claim – any claim – against WCP.  They failed.  They were accorded ample opportunity to pursue their appellate remedies in Illinois following WCP's bankruptcy.  They failed and refused.  They were then accorded the opportunity to demonstrate a triable issue of fact in the Adversary.  They failed.

      Enough is enough.  The confirmation and execution of a reorganization plan in bankruptcy must mean something.  Debtors are both required and entitled to conclude their affairs.  Creditors are entitled to payment in accordance with a plan's treatment of their allowed claims.  Bankruptcy

---

[8]  *See* B.R. 7062 (F.R.Civ.P. 62(b)) and B.R. 8007(a)(1)(B), (c).

must serve its purpose as an equitable proceeding by which rights in and to a *res* are promptly and efficiently determined and adjusted.[9]  The intransigence of one person or an affiliated group claiming creditor status -- but repeatedly failing to establish that status as a matter of law -- cannot be allowed to hold the courts, the debtor and allowed creditors hostage indefinitely.

     **4.**     <u>**The likely impact if the Appellants' challenge were sustained.**</u>  WCP considers the possibility of a sustained challenge vanishingly remote.  Nonetheless, and because it is a factor in the assessment of the equities, WCP offers the following:

     A.     The Order grants summary judgment in WCP's favor.  Obviously, WCP will defend that grant to and including proceedings in the Tenth Circuit, if necessary.

     B.     If the grant is ultimately reversed, the Adversary may or may not proceed to trial, depending on whether appellate proceedings in the Illinois courts are by then concluded and result in affirmance of the orders dismissing the Appellants' claims with prejudice, in which case the Appellants' victory would be entirely pyrrhic as their claims would be barred by res judicata, collateral estoppel, and under the *Rooker-Feldman* doctrine.

     C.     Leaving aside what may or may not happen in the Illinois litigation, and assuming a normal course in this Court and the Tenth Circuit, followed by normal passage of time following ultimate remand, it is unlikely any trial could occur before 2025.  The trial would, for the most part, concern events and circumstances existing and occurring in the period between 2006 and 2009.  Witnesses will have died or disappeared, those who remain will have little, if any, recollection, and myriad other problems of proof can be

---

[9]   Bankruptcy is an equitable *in rem* proceeding, particularly in matters of claim allowance. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004); *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934); *Loveridge v. Hall (In re Renewable Energy Dev. Corp.)*, 792 F.3d 1274, 1281 – 82 (10th Cir. 2015 (Gorsuch, J.)).

expected.

D.      Assuming a trial proceeds and the Appellants do not prevail (including with respect to WCP's claim for equitable subordination), and assuming their preference for prolonged litigation continues, another round of appeals will follow, likely lasting into 2028, regardless of whether WCP (which by that time will have no resources for payment of counsel) participates.  If, on the other hand, the Appellants prevail, and assuming WCP lacks the resources to appeal, the underlying bankruptcy case, closed in March, 2020, will need to be reopened.  WCP will have no administrative or financial capacity to effect a reopening, including the payment of the statutorily required fee, currently $1,167.00.  28 U.S.C. 1930; https://www.uscourts.gov/services-forms/fees/bankruptcy-court-miscellaneous-fee-schedule.  Thus, the task will likely fall to the Appellants.

D.      The purpose of reopening will be to initiate proceedings aimed at requiring the Unsecured Creditors to disgorge the payments they received in March, 2021.  Just how those proceedings will occur is unclear.  But what is clear is that there will be no basis in law for the disgorgement, for reasons discussed above.

In sum, the likely result of a sustained challenge will be, at best, an ongoing waste of judicial time and resources and, at worst, a recurring harassment of creditors whose only "fault" will have been to receive payment of funds due them years following the confirmation of their debtor's reorganization plan.

        **5.      Policy implications**.  Much of the preceding discussion is relevant to this factor and need not be reiterated.  *See Jubber*, at 1347 (discussing policy and finality concerns in the form of orderly reorganization and impracticability of reconstructive relief, citing *Sw. Bell Tel. Co. v. Long Shot Drilling, Inc. (In re Long Shot Drilling, Inc.)*, 224 B.R. 473, 479 (10th Cir. B.A.P. 1998)

and *Rochman v. Ne. Utils. Serv. Group (In re Pub. Serv. Co. of N. Hamp.)*, 963 F.2d 469, 471-72 (1st Cir. 1992)).  It suffices to observe that virtually every policy objective of bankruptcy – efficiency and promptness of administration, encouragement of reorganization and reliance on confirmed plans of reorganization, orderly and equitable treatment of claims, insistence on conclusion and finality, etc. – is subverted when, as here, would be creditors employ the claim allowance process as a tool of cost imposition, uncertainty and delay, then, without any attempt to obtain a stay, employ the appellate process in an effort to re-double those impacts.  Those who seek equity must do equity.  *Rushton v. ANR Co. (In re C.W. Mining Co.),* 740 F.3d 548, 561 (10th Cir. 2014)(quoting *Mfrs. Fin. Co. v. McKey,* 294 U.S. 442, 449 (1935)).  Nothing in equity, nor any discernable policy, suggests this appeal is anything but moot.

      6.    **<u>A quick look at the merits</u>**.   A brief perusal of the Order shows it to be thorough, detailed, well-reasoned and amply supported.  It dissects and adjudges the Appellants' claims – correctly – as devoid of legal and factual support.  By way of example:

    A.    Notwithstanding years of preparation and research, the Appellants were unable to demonstrate a genuine issue of material fact.  *See* Order, at 13-16; *also* 22-23, 25 and 27.

    B.    The Appellants' position, anchored in large part to assertions of claim preclusion, proved unsustainable as a matter of law.  *Id.*, at 16-17.

    C.    The Appellants' central claims of fraud implicating WCP's loan relationship were held foreclosed by Colorado's Credit Agreement Statute of Frauds.  *Id.,* at 20-21.

    D.    Additional claims were premised on inapplicable law.  *Id.,* at 23-24.

    E.    One claim was not even asserted against WCP and others were predicated on alleged forgeries having no impact on the enforceability of the loan documents at issue.  *Id.,* at 21-22 and 25-26.

F.      An additional claim was predicated on alleged contempt occurring in the Illinois litigation, a matter not redressable in the Bankruptcy Court, and which (as noted above) had been rejected in the Illinois litigation both by the trial court and on appeal.  *Id.*, at 26.

The Appellants' position in this appeal is anything but "legally meritorious or equitably compelling." *Jubber*, at 1340.

**III.     Conclusion**

For the foregoing reasons, this appeal should be dismissed.

Respectfully submitted this 19th day of April, 2021.

EASONLAW, LLC

*/s/ David R. Eason*
David R. Eason, No. 11243
1129 Cherokee
Denver, CO 80204
Telephone: (303) 725-8756
dave@dreasonlaw.com

**CERTIFICATE OF COMPLIANCE WITH B.R. 8015(h)**

The undersigned hereby certifies that this Motion, including its caption, signature block and certificate of service, contains 4,628 words, and therefore complies with the limit established by B.R. 8013(f)(3)(A).

*/s/ David R. Eason*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2021, a true and correct copy of the foregoing **MOTION TO DISMISS APPEAL** was filed and served via ECF and/or other electronic delivery, addressed to the following:

Bruce L. Cook
Law Office of Bruce L. Cook
7411 S. Stony Island Avenue
Suite 601
Chicago, IL 60649

Rufus Cook, *Pro Se*
7411 S. Stony Island Avenue
Chicago, IL  60649

*/s/ David R. Eason*
David R. Eason